### 43264. LARMON v. THE STATE.
(345 SE2d 587)

MARSHALL, Chief Justice.

We granted certiorari in *Larmon v. State,* 177 Ga. App. 763 (341 SE2d 237) (1986), to review the Court of Appeals' affirmance of the trial court's denial of the appellant's challenge to the array of the traverse jury. We affirm.

The appellant does not contend that the electronic selection process authorized by OCGA §§ 15-12-40 (b); 15-12-42 (b) per se violates the right to an impartial jury, but rather that the particular computer selection process then in use in the Superior Court of Whitfield County failed to randomly select the jury panels as required by law; did not "provide for a fair, impartial, and objective method of selecting persons for jury service," as required by OCGA § 15-12-42 (b) (2) (A); and did not select the traverse jury from a fair cross section of the community. *Wilson v. State,* 250 Ga. 630, 635 (3a) (300 SE2d 640) (1983).

"A defendant is entitled to an array of properly drawn, impartial jurors to which he may direct his peremptory challenges. A party is entitled to this as a matter of right; but, conversely, he is entitled to no more. [Cit.]" *Dampier v. State,* 245 Ga. 427, 433 (265 SE2d 565) (1980). "There is no constitutional guarantee that the grand or petit juries, impanelled in a particular case will constitute a representative cross-section of the entire community. 'A defendant is not constitutionally entitled to a venire or jury roll of any particular composition

. . . [Cits.]' [Cit.] What the Constitution does require is 'that the state not deliberately and systematically exclude identifiable and distinct groups from their jury lists.' [Cit.]" *Campbell v. State*, 240 Ga. 352, 356 (240 SE2d 828) (1977). " 'Criminal defendants in state courts may challenge discriminatory selections of grand and petit juries through the equal protection clause of the Fourteenth Amendment. (Cits.)' [Cit.] Moreover, criminal defendants in state courts have the right to challenge, under the Sixth Amendment, petit juries not selected from a fair cross section of the community. [Cit.] The two challenges are not entirely analogous. [Cits.] However, common to each is the requirement that the defendant must establish prima facie that a distinct and identifiable group in the community is substantially underrepresented on the jury venire being challenged." *Wilson v. State*, 250 Ga. 630, supra at 635 (3a).

The appellant apparently makes no contention that the initial elements and stages of the jury selection process were not randomly neutral. His sole contention appears to be that the *ultimate* arrangement of the names of the selected jurors on the final computer print-out contains: (a) alphabetical sequences, (b) a numerical sequence, and (c) geographical patterns.

(a) *Alphabetical sequences.* The computer print-out contained a number of blocks or sets of alphabetized jurors, which the appellant argues is inconsistent with a true random-selection process. However, the official jury list consists of an alphabetically-arranged computer print-out, OCGA § 15-12-43 (b), and the system in question scanned the entire list, as required by OCGA § 15-12-40 (b) (4). An employee of the company which originated this particular computer system testified that the fact of jurors' names being in alphabetical order or their residences being on the same street is "just at random" and "a coincidence." Furthermore, this sequence does not cause substantial underrepresentation of any "distinct and identifiable group in the community." *Wilson v. State*, 250 Ga. 630, supra at 635 (3a).

(b) *Numerical sequence.* The jurors selected were listed on the final print-out according to their corresponding voter registration number, with the individual who had been assigned the lowest voter registration number being first on the computer print-out and the one with the highest number being last. The computer was not specifically programmed to *rearrange* the randomly selected jurors in this order. Rather, the master list from which the selections were made was itself arranged in sequential order of voter registration number. The computer was merely programmed to initiate its selection process from a randomly selected position in the master list and then to scan the entire length thereof, selecting jurors at regular intervals so as to ensure that individuals from all segments of the master list would be chosen. The arrangement of the names on the final print-out was

purely the consequence of the fact that the computer was also programmed to list the jurors in order of their ramdom selection from the master list.

The appellant argues that the system used results in jury lists which always begin with jurors who have lower voter registration numbers, hence are older. (The appellant was 24 years old at the time of his trial.) However, the county's Chief Registrar testified that the appellant's premise was not necessarily true, and that many persons with lower numbers are the same age or younger than those with higher numbers, which would include newer residents. There was also testimony that the voters list is alphabetically, not numerically, arranged, and that the registration number is used in the computer merely for the purpose of accessing the computer files to update them. The programmer of the computer system in question testified that it was not feasible to set up the computerized jury list alphabetically because of the possibility of there being more than one juror with the same name. We agree with the Court of Appeals that the appellant failed to establish prima facie that those who were more recently registered voters and those who had been registered for a longer period were "distinct and identifiable" groups in the community. See generally *Berryhill v. State*, 249 Ga. 442, 445 (3) (291 SE2d 685) (1982). Compare *Parks v. State*, 254 Ga. 403, 409 (6b) (330 SE2d 686) (1985).

(c) *Geographical patterns.* The appellant maintains that the master jury list was composed in order of the various voter boxes in the county; therefore, he contends that this resulted in blocks or groups of jurors from the same geographical areas being put upon him on the panel. The significance of this, he argues, is that he was a white man being tried for the voluntary manslaughter of the black male lover of his black female ex-lover; that the black population of the county (who, he contends, would be more sympathetic with his lifestyle in this interracial love triangle) was concentrated mainly in one section of the City of Dalton; and that, because of this composition, he had to exhaust all of his peremptory challenges to eliminate jurors anticipated to be hostile to him (i.e., older, rural, and white residents).

The defendant had no constitutional guarantee that his jury would constitute a representative cross-section of the entire community, nor was he entitled to a venire or jury roll of any particular composition. *Campbell v. State*, 240 Ga. 352, supra at 356. Since the appellant does not contend that the original selection process was not randomly neutral, the mere fact that the names were originally obtained from geographical voting districts would not result in a nonrandom geographical pattern. There was no showing of a deliberate and systematic exclusion of identifiable and distinct groups, such as

urban or black.

It is possible that a geographical arrangement could result in a list which is improperly constituted. The record in this case does not reveal such an effect. However, even though the jury list was not constitutionally infirm in this case, we note that it would be desirable if the list contained no alphabetical, geographical, or numerical patterns, and we strongly suggest that trial courts take steps to totally randomize the juror selection process.

What the appellant apparently seeks is for the computer to randomly print a list of names which are admitted to have been randomly selected already. In construing the Jury Selection and Service Act, 28 USC § 1861 et seq., a federal court has held that "[i]t is sufficient for the purpose of this legislation if the plan adopts some system of selection that affords no room for impermissible discrimination against individuals or groups . . . Absolute or 'true' statistical randomness is thus not required for reasons of administrative feasibility. While an additional random selection might be better in terms of fairness to counsel trying a number of cases in a short period of time, by decreasing the chance that a given panel of jurors would remain as a group and meet the same attorney again, the lack of such an additional selection is not a deficiency in terms of . . . the Constitution." *United States v. Haley*, 521 FSupp. 290, 294 (N.D. Ga. 1981). Since the appellant failed to establish a prima facie case of unconstitutional jury discrimination, the Court of Appeals did not err in affirming the trial court's denial of the appellant's challenge to the array of the traverse jury.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 16, 1986 —
RECONSIDERATION DENIED JULY 30, 1986.

*Mitchell, Coppedge, Wester, Bisson & Miller, E. Neil Wester III,* for appellant.
*Jacques O. Partain III, District Attorney,* for appellees.