OPINION OF THE COURT
Renee R. Roth, S.
The court is presented with the novel question of whether an attorney-in-fact may, without prior court approval, renounce an intestate share and insurance proceeds which would otherwise pass by operation of law to an incapacitated person.
Decedent, Philip Kunkis, died intestate survived by his wife Charlotte and three adult children, Robert, Richard and Lynne Kunkis. Under the laws of intestate succession (EPTL 4-1.1), the widow would be entitled to receive $50,000 plus one half of her husband’s estate, as well as her family allowance under EPTL 5-3.1. The balance of decedent’s estate would be shared by the three children. The intestate estate is valued at approximately $100,000. The value of the insurance is unknown.
The issue before the court arises because of the presentation for filing of a timely renunciation signed by Robert Kunkis as attorney-in-fact for his mother. Mrs. Kunkis had executed a statutory short form power of attorney in 1992, at about the time of her admission to a nursing home, naming her husband and son Robert as attorneys-in-fact to act severally. Under the law in effect when the power of attorney was executed (General Obligations Law § 5-1501), such a power listed various types of transactions over which the agent was to have authority. The principal was required to strike out those powers not granted to the agent. It is noted, parenthetically, that current law requires the opposite, viz., the principal must check off each power granted to the agent (General Obligations Law § 5-1501, as amended by L 1994, ch 694, eff Oct. 1, 1994).
On the form signed by the widow, one of the enumerated categories was "estate transactions”. She did not strike out *674 this category. Mrs. Kunkis is still in the nursing home, presumably receiving Medicaid. She has no conservator, committee or guardian.
Two statutes govern the effectiveness of the renunciation. They, however, appear to be inconsistent.
EPTL 2-1.11 (c) provides, in relevant part, as follows: "A renunciation on behalf of an * * * incompetent [or] conservatee * * * shall be made by * * * a committee of such incompetent [or] a conservator of such conservatee * * * Such renunciation shall not be effective unless, prior thereto, the * * * committee [or] conservator * * * has been authorized * * * by the court having jurisdiction of the estate.”
Under this statute, a personal representative may disclaim an interest passing from a decedent only if permitted by the court. The statute, however, is silent with respect to a disclaimer by an attorney-in-fact. It is observed that this section has not been amended to reflect the enactment of article 81 of the Mental Hygiene Law (L 1992, ch 698, § 3, eff Apr. 1, 1993), which replaces the committee and conservator with a new type of fiduciary, the guardian of an incapacitated person. Such guardian has only the powers specifically granted by the court, which may include the power to "renounce or disclaim any interest by * * * intestate succession” (Mental Hygiene Law § 81.21 [a] [10]). Thus this new statute is consistent with EPTL 2-1.11 (c) in that court permission is required.
On the other hand, General Obligations Law § 5-1502G (3), which regulates the language and effect of the New York short form power of attorney, provides that where the agent is authorized to enter into "estate transactions”, he or she may "reject * * * any share in or payment from any estate, trust or other fund”. No prior judicial approval is required by this statute.
A review of the legislative history of the two statutes reveals no express consideration of this apparent inconsistency. A similar problem surrounds the authority of an attorney-in-fact to appear in Surrogate’s Court proceedings. Although General Obligations Law § 5-1502G (7) permits an attorney-in-fact to file "any consent * * * notice of appearance” for the principal, under SCPA 402 (2), a person under disability may appear only by a guardian ad litem, committee or conservator. Balancing the need for disinterested representation with the policy favoring liberal recognition of powers of attorney (Matter of Arens v Shainswit, 37 AD2d 274, 279, affd *675 29 NY2d 663), our courts have permitted such agent to appear only where the absence of a conflict of interest was established (Matter of Simonds, NYLJ, Oct. 3, 1990, at 26, col 2; Matter of Garvin, 153 Misc 2d 43; cf., Matter of Del Vecchio, NYLJ, June 23,1978, at 15, col 6).
This court is reluctant to burden the holder of a power of attorney with all the formalities imposed upon a court-op-pointed fiduciary. Nevertheless, because of this court’s well-established jurisdiction over the conduct of fiduciaries, some further scrutiny is necessary. If the renunciation is effective, Robert will receive one third of his mother’s inheritance from decedent’s estate. Clearly, Robert has a conflict of interest (but see, Matter of Schiffman, 105 Misc 2d 1025). Furthermore, the court must be assured that the renunciation will not impair Medicaid eligibility and thus Mrs. Kunkis’ stay in her nursing home (Matter of Arens, NYLJ, Nov. 6, 1992, at 26, col 2; Matter of Scrivani, 116 Misc 2d 204). Accordingly, the court has appointed a guardian ad litem to protect the interests of Mrs. Kunkis.