*592 OPINION OF THE COURT
Barbara Howe, J.
This is a petition for probate, in which preliminary letters have been issued to the nominated executor, Eleanor Murray, decedent’s surviving spouse. Waivers have been signed consenting to probate by decedent’s three sons, but an issue exists with respect to a purported waiver submitted on behalf of decedent’s daughter, Jane M. Trotter.
Jane, who was born in November 1944, is an adult under a disability. Eleanor Murray states in her supplement to the probate petition that Jane has “for many years lacked legal capacity.” However, other information establishes that Jane “has never been formally adjudicated as an incompetent as a matter of law.”
On June 23, 1983, Jane executed a durable general power of attorney pursuant to article 5, title 15 of the General Obligations Law. By that power of attorney, Jane granted her brother, Norman E. Murray, full and complete authority to act on her behalf, “to the extent that I am permitted by law to act through an agent,” with respect to a broad variety of matters, including “estate transactions.” The power of attorney also provided that the powers granted, and the scope of the document, “shall not be affected by the subsequent disability of or incompetence of the principal.”
When the instant probate petition was filed, it was submitted with a waiver and consent to probate executed on Jane’s behalf by “Norman E. Murray, Attorney in Fact for Jane M. Trotter.” Ultimately, this waiver and consent was not accepted by the court, based on long-standing court policy, and this court indicated its intention to appoint a guardian ad litem to represent Jane’s interests. The proponent of the will, Eleanor Murray, has asked this court to reconsider its position, and additional information has been tendered by her on the issues.
Counsel, in urging reconsideration, has advised this court of the following:
“The Power of Attorney was drawn and witnessed by members of our Firm, and Mr. Murray has acted on behalf of his sister for 23 years in all relevant transactions. Jane Trotter’s illness is a progressive one, and execution of the Power of Attorney in favor of her brother in 1983 was undertaken with the goal of ensuring her well-being and the proper handling *593 of her affairs into the future. . . .
“We believe the Power of Attorney was properly executed in 1983 as an appropriate and prudent legal step to ensure the affairs of Jane Trotter were properly handled in the future. Jane Trotter executed the Power of Attorney in favor of her brother for that express purpose recognizing the chronic and progressive nature of her illness and the high likelihood that she would lack capacity to act on her own behalf in the foreseeable future. Mr. Murray has handled his sister’s affairs since then without objection and in accord with his fiduciary obligations.”
(A)
(i)
SCPA 401 (1) provides that
“A party other than an infant, incompetent or conservatee may appear and prosecute or defend a special proceeding in person or by attorney, except that a corporation or voluntary association shall appear by attorney. An infant by the guardian of his property, an incompetent by the committee of his property and a conservatee by his conservator may appear and prosecute or defend a special proceeding in person or by attorney as provided in 402” (emphasis added).
With respect to an incompetent person, or a person under a disability, SCPA 402 provides that
“1. An infant may appear by the guardian of his property, an incompetent by the committee of his property, and a conservatee by his conservator. The appointment of a guardian ad litem does not bar the guardian, committee or conservator from appearing as a party. The person so appearing and his attorney shall each file on or before the return day of process an affidavit showing
“(a) that he is qualified to protect their rights,
“(b) whether he is related to or connected in business with any party to the proceeding or the attorney for any party,
“(c) whether he is entitled to share in the estate in which the infant, incompetent or conservatee is *594 interested, or is in any way interested therein,
“(d) whether he has any interest adverse to or in conflict with that of the infant, incompetent or conservatee and
“(e) such additional facts as may be required by the court.
“2. A person under disability shall appear by a guardian ad litem where no appearance is made as provided in subdivision one or where the court so directs because of possible adversity or conflict of interest or for other cause.” (Emphasis added.)
Finally, SCPA 403 (2) provides that
“[a] person under disability who does not appear by his guardian, committee or conservator pursuant to 402 shall except as otherwise expressly provided appear by a guardian ad litem appointed by the court on nomination or on its own initiative whenever such person is a necessary party or for other reasons the court deems it necessary to appoint a guardian ad litem to protect the interests of such party.” (Emphasis added.)
The language of SCPA 401, 402 and 403 has led this court for many, many years to preclude the appearance for a person under a disability by his or her attorney-in-fact. The rationale for the policy seems to have been that the statutory provisions are clear and unambiguous on their face and do not permit any appearance not specifically authorized in the statute. Other, but not all, surrogate’s courts in this state have, as this court informally understands it, adopted much the same policy as this court has, and there is very little case law on the issue.
I am persuaded, after much reflection, that this case presents an appropriate opportunity to review the policy of this court. And, having carefully considered the competing principles, I find that the court’s policy should be changed.
(ii)
As the Appellate Division, First Department, noted in Matter of Arens v Shainswit (37 AD2d 274, 279 [1971]), “The General Obligations Law codifies as the public policy of this State that there be liberal use and judicial recognition of the efficacy of powers of attorney.” A person who is given authority under a power of attorney is the principal’s attorney-in-fact. Our Court of Appeals stated recently in Matter of Ferrara (7 NY3d 244, 251 [2006]):
*595 “Section 5-1501 of the General Obligations Law sets out the forms creating a durable and nondurable statutory short form power of attorney (section 5-1501 [1] and [1-a] respectively). By these forms, the principal appoints an attorney-in-fact to act TN [HIS] NAME, PLACE AND STEAD’ with respect to any or all of 15 categories of matters listed in lettered subdivisions (A) through (O) ‘as each of them is defined in Title 15 of Article 5 of the New York General Obligations Law.’ ”
Thus,
“An attorney in fact is essentially an alter ego of the principal and is authorized to act with respect to any and all matters on behalf of the principal with the exception of those acts which, by their nature, by public policy, or by contract require personal performance (Matter of Arens v Shainswit, 37 AD2d 274, affd 29 NY2d 663; Bismark v Incorporated Vil. of Bayville, 21 AD2d 797; Mallory v Mallory, 113 Misc 2d 912). Sections 5-1502A through 5-1502L of the General Obligations Law describe and explain the extraordinary scope of the authority of an attorney in fact with respect to the principal’s various matters” (Zaubler v Picone, 100 AD2d 620, 621 [1984] [emphasis added]).
“To the extent permitted by law and the terms of the power of attorney, an attorney-in-fact may act for her principal in all matters that do not require the principal to act for himself’ (Matter of Rice v Novello, 25 AD3d 992, 993 [2006] [citation omitted]).
General Obligations Law § 5-1502G deals with the construction of the “estate transactions” power. Illustrative of the scope of the powers under this section (subds [1]-[10]) are the following:
“1. To the extent that an agent is permitted by law thus to act for a principal, to apply for and to procure, in the name of the principal, letters of administration, letters testamentary, letters of trusteeship, or any other type of authority, either judicial or administrative, to act as a fiduciary of any sort;
“2. To the extent that an agent is permitted by law thus to act for a principal, to represent and to act for *596 the principal in all ways and in all matters affecting any estate of a decedent, absentee, infant or incompetent, or any trust or other fund, out of which the principal is entitled, or claims to be entitled, to some share or payment, or with respect to which the principal is a fiduciary; . . .
“7. To execute, to acknowledge, to verify, to seal, to file and to deliver any consent, designation, pleading, notice, demand, election, conveyance, release, assignment, check, pledge, waiver, admission of service, notice of appearance or other instrument which the agent may think useful for the accomplishment of any of the purposes enumerated in this section” (General Obligations Law § 5-1502G [emphasis added]).
It is clear, then, that the execution of a waiver and consent to probate of a decedent’s will falls squarely within the powers granted to an attorney-in-fact under a durable power of attorney which authorizes him or her to handle “estate transactions” for the principal.
This court has been guided previously by the concern that, because SCPA 401, 402 and 403 make no reference to an appearance by an attorney-in-fact, the court must, in those circumstances where neither a “conservator” nor a “committee” has been appointed for an adult under a disability, appoint a guardian ad litem to appear for and protect the interests of such person. In that regard, the purpose and functions of an attorney-in-fact, and the sweeping powers given to an attorney-in-fact, have not previously led the court to review the SCPA, consider what the appearance provisions look to accomplish, and then determine whether a person holding a valid power of attorney actually fits into the statutory scheme of appearance and representation, even though not specifically mentioned.
It is clear that SCPA 401, 402 and 403 seek to ensure that the interests of an adult incompetent or incapacitated person, or an adult under a disability, are represented in a proceeding in a surrogate’s court by someone who has formally been given appropriate powers over such person’s affairs. The relevant provisions, however, have not been affirmatively dealt with by the New York State Legislature in this area in many years, as evidenced by the continuing use of the terms “committee,” “conservator,” and “conservatee,” which refer to appointments made under the Mental Hygiene Law prior to the 1992 enactment of Mental Hygiene Law article 81, which became effective April 1, *597 1993, when articles 77 (conservators) and 78 (committees) of the statute were repealed.
The terms “committee,” “conservator,” and “conservatee” under SCPA 401 and 402 are construed to include a “guardian” appointed under the new 1993 Mental Hygiene Law article 81. (See, L 1992, ch 698, § 4; see also, 1 Warren’s Heaton, Surrogates’ Courts § 7.02 [8], at 7-25 [6th ed rev].) Reading the relevant provisions of the SCPA with Mental Hygiene Law article 81 convinces me that there is no need now — even if there may previously have been one — to preclude an adult under a disability from appearing in an estate proceeding by her attorney-in-fact.
Mental Hygiene Law § 81.01 sets out the legislative findings for enacting the new type of guardianship in 1992:
“The legislature hereby finds that the needs of persons with incapacities are as diverse and complex as they are unique to the individual. The current system of conservatorship and committee does not provide the necessary flexibility to meet these needs. Conservatorship which traditionally compromises a person’s rights only with respect to property frequently is insufficient to provide necessary relief. On the other hand, a committee, with its judicial finding of incompetence and the accompanying stigma and loss of civil rights, traditionally involves a deprivation that is often excessive and unnecessary. Moreover, certain persons require some form of assistance in meeting their personal and property management needs but do not require either of these drastic remedies. The legislature finds that it is desirable for and beneficial to persons with incapacities to make available to them the least restrictive form of intervention which assists them in meeting their needs but, at the same time, permits them to exercise the independence and self-determination of which they are capable. The legislature declares that it is the purpose of this act to promote the public welfare by establishing a guardianship system which is appropriate to satisfy either personal or property management needs of an incapacitated person in a manner tailored to the individual needs of that person, which takes in account the personal wishes, preferences and desires of the person, and which affords the person the greatest amount of independence and self-determination and *598 participation in all the decisions affecting such person’s life.” (Emphasis added.)
In Matter of Eggleston (Muhammed) (303 AD2d 263, 266 [2003]), the Appellate Division, First Department, discussing certain procedural requirements of Mental Hygiene Law article 81, observed:
“Moreover, a hearing would have accommodated the goals of article 81, enacted within the past decade to provide a more flexible scheme for aiding persons with impeded capacities than was available under the prior, more rigid, conservatorship provisions that were thereby replaced. A showing of complete incompetence is not required. Rather, the new statute contemplates evaluating whether a respondent has particular incapacities and, if so, tailoring more limited guardianship powers to fit those needs (see generally Matter of Maher, 207 AD2d 133, 137-139 [1994], lv denied 86 NY2d 703 [1995]; Law Rev Commn Comments, McKinney’s Cons Laws of NY, Book 34A, Mental Hygiene Law § 81.02, at 258-261).” (Emphasis added.)
Courts in article 81 proceedings must, therefore, look to what is specifically needed under all the facts in a given case, and not appoint a guardian where the circumstances do not clearly warrant it. So, for example, in Matter of Isadora R. (5 AD3d 494, 494 [2004]), the Appellate Division, Second Department, reversed the appointment of an article 81 guardian, holding:
“The Supreme Court improvidently exercised its discretion in appointing a guardian for Isadora R., an alleged incapacitated person. The evidence adduced at the hearing established that Isadora R. effectuated a plan for the management of her affairs and possessed sufficient resources to protect her well being, thus obviating the need for a guardian over her person or property (see Mental Hygiene Law § 81.02; Matter of Crump, 230 AD2d 850 [1996]; Matter of O’Hear, 219 AD2d 720 [1995]; Matter of Maher, 207 AD2d 133 [1994]). There was no evidence that the appellant, a longtime friend of Isadora R., and Isadora R.’s chosen attorney-in-fact and health care proxy, mishandled Isadora R.’s property or that Isadora R.’s health and well-being were harmed by any actions taken by the appellant sufficient to justify revoking the power of attorney and health care proxy in favor of a court-appointed *599 guardian (cf. Matter of Rochester Gen. Hosp., 158 Misc 2d 522 [1993])” (emphasis added).
See, by way of contrast, Matter of Ardelia R. (28 AD3d 485 [2006]), where the Appellate Division, Second Department, affirmed the decision of the trial court which had invalidated a power of attorney as having been procured by undue influence and then appointed an article 81 guardian.
These cases, and the statutory findings for enactment, illustrate that what a Mental Hygiene Law article 81 guardianship entails is not at all the same as a prior statutory conservatorship. And they also, and perhaps more importantly, show that the public policy of this state, at least from April 1993 on, is to require judicial recognition and approval of the plans an individual has made for the management of her property and, in an appropriate case, for her personal needs, and not impose a guardianship if those plans appropriately meet the needs of that individual.
This being so, and given the concomitant “public policy of this State that there be liberal use and recognition of the efficacy of powers of attorney” (Arens v Shainswit, supra at 279), I find that a validly executed power of attorney, which authorizes, as in the instant case, the attorney-in-fact to act for the principal in “estate matters,” must be given recognition by this court where the attorney-in-fact seeks to appear and act for the principal in a probate or administration proceeding. A formal plan for handling the incapacitated person’s property interests validly established by her should not be lightly set aside or disregarded by the courts.
As Matter of Isadora R. (supra) shows, it is unlikely that an article 81 guardianship could be established to handle the property affairs of an incapacitated person who had validly granted a power of attorney to another to act as her attorney-in-fact. Thus, if recognition of the power of attorney were not granted in estate matters, the public policy of this state would be ignored where a valid plan had been put in place by an incapacitated person to handle her affairs. Such an incapacitated person would not be able to appear in Surrogate’s Court through a guardian because none could be appointed for her. Likewise, she would not be able to appear there through her chosen attorney-in-fact if a narrow and literal interpretation of SCPA 401 and 402 failed to take into account the underlying purpose and intent of the appearance and representation scheme of the statute, and also if the other, largely parallel, public policy considerations I have *600 discussed were ignored. I do not believe that such a narrow view is either warranted or just, and I direct that it no longer be followed in this court.
(in)
Having determined that an attorney-in-fact may properly appear for an incapacitated person in estate proceedings, I now turn to certain procedural issues for the exercise here of the power of attorney. As a general matter, recognition of a power of attorney will be granted provided there is a showing that the instrument was validly executed and that there is no conflict of interest in the estate proceeding between the attorney-in-fact and the principal (see e.g. Matter of Kunkis, 162 Misc 2d 672 [1994] [disallowing the appearance], and Matter of Garvin, 153 Misc 2d 43 [1991] [allowing the appearance]).
In this regard, SCPA 402 (1), EPTL 13-2.3 and Uniform Rules for Surrogate’s Court (22 NYCRR) § 207.48 furnish procedural guidance. SCPA 402 (1) (quoted, supra at 593-594) requires that a conservator or a committee, and by construction a Mental Hygiene Law article 81 guardian, file an affidavit with the court detailing various relevant facts as to the representation.
EPTL 13-2.3 (a) requires that
“[e]very power of attorney relating to an interest in a decedent’s estate and every conveyance or assignment of an interest in an estate, or similar instrument, which contains an express or implied authorization or delegation of power to act thereunder shall be in writing and acknowledged or proved in the manner prescribed by the laws of this state for the recording of a conveyance of real property and, subject to the rules or order of the surrogate hereinafter provided, shall be recorded in the office of the surrogate granting letters on such decedent’s estate or, if no such letters have been granted, in the office of the surrogate having jurisdiction to grant them. Such recording confers on the surrogate jurisdiction over the grantor of such power of attorney, the attorney in fact therein named and any other person acting thereunder. No attorney in fact named in any power of attorney or in such other instrument nor any person acting thereunder shall perform any act under such instrument unless it has been duly recorded.”
*601 Section 207.48 of the Uniform Rules requires certain additional information be provided to the court when a power of attorney is being recorded:
“(a) No power of attorney affecting any interest in a decedent’s estate shall be filed or recorded pursuant to EPTL 13-2.3 unless:
“(1) the instrument is satisfactory to the court as to form, content and manner of execution; and
“(2) the person offering the instrument for filing or recording shall furnish an affidavit of the attorney-in-fact, stating: the circumstances under which the power of attorney was procured; the post office address of the grantor; the amount of his or her interest and relationship, if any, to the decedent; the financial arrangement and exact terms of compensation of the attorney-in-fact or of any other person concerned with the matter; disbursements to be charged to the grantor; a copy of any agreement concerning compensation; and the name of any attorney representing the attorney-in-fact.
“(b) An attorney-in-fact in a proceeding for the determination of kinship shall not accept any payment for acting pursuant to a power of attorney unless there has been filed with the court all the terms of the agreed-upon compensation or the same has been fixed by the court in a proceeding pursuant to SCPA 2112.”
The information required by section 207.48 of the Uniform Rules is similar, though more detailed, than what SCPA 402 (1) demands. Both types of submissions serve to give the court a basis to determine whether the appearance and representation are appropriate and should be permitted. In the case of a section 207.48 affidavit, it permits the court to determine whether the power of attorney was validly executed and whether any conflict of interest by such an appearance exists.
Thus, this court will require that, whenever an attorney-in-fact seeks to appear in an estate matter on behalf of her principal, in addition to following the EPTL 13-2.3 requirements for recording a power of attorney, the section 207.48 affidavit must also be filed in the court. Unless this court finds the filing legally insufficient, in which case it will either seek further information or appoint a guardian ad litem to report to the court on the areas of concern, or unless the court finds either (a) that the power of attorney was not validly executed, or (b) *602 that representation of the principal by the attorney-in-fact would result in a conflict of interest, in which case the appearance by the attorney-in-fact will not be permitted, the attorney-in-fact may appear on behalf of the principal in any estate proceeding.
(B)
Turning to the instant case, although the power of attorney executed by Jane has been filed with the various papers in this proceeding, no section 207.48 affidavit has been provided. Therefore, I direct that, within 20 days from the date of this decision, Norman E. Murray shall file that affidavit in compliance with the Uniform Rules.