2010 WY 155

In re the GUARDIANSHIP AND CONSERVATORSHIP OF Nina H. PARKHURST.

Carl Douglas Boykin, Appellant (Petitioner),

v.

Nina H. Parkhurst, by and through her attorney-in-fact Randall K. Boykin, Appellee (Respondent).

In re the Guardianship and Conservatorship of Nina H. Parkhurst.

M. Gregory Weisz, Appellant (Guardian ad Litem),

v.

Nina H. Parkhurst, by and through her attorney in fact Randall K. Boykin, Appellee (Respondent).

Nos. S–09–0251, S–09–0252.

Supreme Court of Wyoming.

Dec. 1, 2010.

Representing Appellant: Jason M. Tangeman and Julie M. Wickett of Nicholas & Tangeman, LLC, Laramie, Wyoming. Argument by Mr. Tangeman.

Representing Appellee: William L. Hiser of Brown & Hiser, LLC, Laramie, Wyoming.

Representing Guardian ad Litem: M. Gregory Weisz of Pence and Macmillan, LLC, Laramie, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT *, and BURKE, JJ.

HILL, Justice.

[¶ 1] In documents signed by Nina H. Parkhurst (Parkhurst) in September of 2001, she designated one of her sons, Appellee Randall K. Boykin (Randall), as her attorney in fact, for purposes of managing her estate and day-to-day business matters. At that same time she also executed an Advanced Health Care Directive designating Randall as the individual to make health care decisions for her if she became incapacitated. Appellant, Carl Douglas Boykin (Douglas), is Randall's brother and also a son of Parkhurst. Douglas petitioned the district court seeking the appointment of a guardian and conservator for Parkhurst's person and estate, alleging that she was not being properly cared for and that her estate was vulnerable because of the broad scope of the Durable Power of Attorney Randall held. On December 29, 2008, the district court appointed a

Guardian ad Litem (GAL) for the limited purpose of making an inquiry into the allegation made by Douglas and to then file a report with the district court.

[¶ 2] In Case No. S–09–0251, Douglas contends that the summary judgment the district court ultimately granted in favor of Randall, on October 15, 2009, was erroneous because the district court's November 5, 2008 decision to appoint a GAL decided the issue of whether a GAL was a "necessity," and that decision was binding on the district court pursuant to the law of the case doctrine. Douglas also contends that there are genuine issues of material fact with respect to the "necessity" for a guardian/conservator and, therefore, the district court erred in awarding summary judgment in Randall's favor.

[¶ 3] In Case No. S–09–0252, the GAL, M. Gregory Weisz, who was appointed by the district court to investigate the necessity for a guardian/conservator, filed a separate appeal. In that appeal, he contended that the district court erred in finding no necessity requiring appointment of a guardian/conservator because his inquiry concluded that more accountability was necessary in order to monitor the well being of Parkhurst's person, as well as her estate. Randall, acting for Parkhurst, contends that the appeal must be dismissed because the GAL does not have standing to appeal the district court's summary judgment order.

[¶ 4] We will dismiss the appeal in Case No. S–09–0252 on the basis that the GAL lacks standing to appeal in these circumstances. However, we have considered his brief which was filed in support of Douglas Boykin in Case No. S–09–0251. We will affirm the district court's summary judgment order in Case No. S–09–0251.

## ISSUES

[¶ 5] Douglas states his issues as follows:

Whether the district court's November 5, 2008 decision letter was binding upon the court pursuant to the law of the case doctrine and the court erred by granting sum-

* Chief Justice at time of oral argument.

mary judgment contrary to its November 5, 2008 ruling.

The district court erred in granting summary judgment in this matter as ample evidence existed in the record that a guardian and conservator for Nina Parkhurst is necessary thus creating a genuine issue of material fact.

Parkhurst, by and through her attorney in fact Randall, states the issues thus:

I. Does the trial court's denial of a motion to dismiss considered solely on the pleadings preclude the trial court from later granting a motion for summary judgment based on the record?

II. In light of Parkhurst's Durable Power of Attorney, her Durable Power of Attorney for Health Care, and the facts and circumstances of this case, is there any evidence showing "necessity for the appointment" of a guardian or conservator?

### FACTS AND PROCEEDINGS

[¶ 6] On September 24, 2008, Douglas filed his Petition for Guardianship and Conservatorship for Nina H. Parkhurst. He asserted that neither Parkhurst herself, nor her estate, were being properly cared for or managed by Randall. Douglas proposed that he, or some other third party, be appointed as conservator and guardian. On October 15, 2008, Randall filed a motion to dismiss that petition under W.R.C.P. 12(b)(6). That motion was premised on the circumstance that Parkhurst had made complete arrangements for the management of her affairs, during her lifetime, by means of a durable general power of attorney in Randall's favor, as well as a durable power of attorney for health care which was to become effective upon her incapacity. Those documents named Randall as her attorney in fact, as well as her conservator. Parkhurst also named a substitute agent to act in the event of Randall's death or incapacity (and that was someone other than Douglas). Randall recorded the two powers of attorney with the Carbon County Clerk and Recorder on November 30, 2007.

[¶ 7] In a decision letter dated November 5, 2008, and filed of record on November 6, 2008, the district court indicated that it had held a hearing into this matter on October 15, 2008, although there is not a transcript of that hearing in the record. The district court noted that Douglas initiated this litigation because he was concerned that Parkhurst was unable to manage her affairs or take care of herself or her property because she suffers from Alzheimer's disease. The district court also noted that Parkhurst had executed the powers of attorney noted above in favor of Randall on September 10, 2001. Continuing, the district court summarized the allegations made by Douglas to the effect that Randall appeared to be trying to isolate Parkhurst from her friends and family, as well as from Douglas and his family in particular, by moving her to her ranch, the Huston ranch. Douglas also claimed that Parkhurst was not receiving the level of care she needed under Randall's supervision. He asserted that much of her care was entrusted to Randall's woman friend and her 16–year–old daughter.

[¶ 8] The district court then recited the standards that a court is required to apply to such a motion to dismiss. The district court perceived the question posed in these circumstances to be: Where a proposed ward had executed a durable power of attorney as provided for in Wyo. Stat. Ann. § 3–5–101 (LexisNexis 2009), and an advanced healthcare directive as provided for in Wyo. Stat. Ann. § 35–22–403 (LexisNexis 2009), is there any *necessity* to appoint a guardian or a conservator. The district court recited applicable authorities and the allegations made by Douglas (that Parkhurst was not being properly cared for and that Randall was misusing her financial resources), and found "that there *may* be a 'necessity' to appoint a guardian and conservator" for Parkhurst. On that basis, the district court appointed a guardian ad litem to make an inquiry into the allegations made by Douglas and directed him to report back to the district court.

[¶ 9] The report from the GAL was submitted to the district court, under seal, on April 7, 2009. The report recommended the appointment of a guardian/conservator and that that person be Randall. In response to that report, Douglas filed a motion for the

appointment of a temporary guardian/conservator. Randall first filed a motion to deny that petition, and then filed a motion for summary judgment. Accompanying that motion was Randall's affidavit that he had faithfully performed his duties as Parkhurst's attorney in fact, as well as a copy of the durable general power of attorney and the durable power of attorney for health care. Parkhurst executed those documents on September 10, 2001. In addition to copies of the executed documents, Randall's motion included an affidavit from Chuck Denison, Ph.D. Denison had examined Parkhurst at the time she signed the powers of attorney and ascertained that her testamentary capacity was not "compromised or even in question" at that time. Randall had taken Douglas's deposition on June 11, 2009, and a copy of that deposition was also attached to the motion for summary judgment.

## DISCUSSION Case No. S–09–0252

### Standard of Review

[¶ 10] With respect to standing, we have held:

"Standing is a legal concept designed to determine whether a party is sufficiently affected to insure that the court is presented with a justiciable controversy." *Pedro/Aspen, Ltd. v. Board of County Commissioners for Natrona County*, 2004 WY 84, ¶ 8, 94 P.3d 412, 415, quoting *Jolley v. State Loan and Investment Board*, 2002 WY 7, ¶ 6, 38 P.3d 1073, 1076 (Wyo.2002) (citations omitted).

"The doctrine of standing is a jurisprudential rule of jurisdictional magnitude. At its most elementary level, the standing doctrine holds that a decision-making body should refrain from considering issues in which the litigants have little or no interest in vigorously advocating. Accordingly, the doctrine of standing focuses upon whether a litigant is properly situated to assert an issue for judicial or quasi-judicial determination. A litigant is said to have standing when he has a 'personal stake in the outcome of the controversy.' This personal stake requirement has been described in Wyoming as a 'tangible interest' at stake.

The tangible interest requirement guarantees that a litigant is sufficiently interested in a case to present a justiciable controversy."

*Id.*, ¶ 8, quoting *Jolley*, ¶ 6, which quoted, *Roe v. Board of County Commissioners, Campbell County*, 997 P.2d 1021, 1022–23 (Wyo.2000). See also, *McNeel v. McNeel*, 2005 WY 36, ¶ 16, 109 P.3d 510, 514 (Wyo. 2005).

*In re Adoption of CF*, 2005 WY 118, ¶ 39, 120 P.3d 992, 1004–5 (Wyo.2005).

[¶ 11] In this case, the GAL is not affiliated with any party to this appeal. He was appointed by the district court to produce a report designed to aid the district court in resolving the dispute between the Boykin brothers. The GAL functioned more as a witness than anything else. However, he has no interest in the outcome of this case and the mere fact that he prepared a report does not vest him with the status of a party. See e.g., *Rowe v. Rowe*, 2009 OK 66, ¶ 10, 218 P.3d 887, 891 (Okla.2009).

[¶ 12] For this reason, we dismiss the appeal in Case No. S–09–252. However, we will consider the brief filed by the GAL in support of the issues raised by Douglas in Case No. S–09–0251.

## DISCUSSION Case No. S–09–0251

### Standard of Review

[¶ 13] We evaluate the propriety of a summary judgment by employing the same standards and using the same materials as the district court. Thus, our review is plenary. W.R.C.P. 56 governs summary judgments. A summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. When reviewing a summary judgment, we consider the record in the perspective most favorable to the party opposing the motion and give that party the benefit of all favorable inferences which may be fairly drawn from the record. We review questions of law de novo without giving any deference to the district court's determinations.

[¶ 14] "A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted." *Christensen v. Carbon County,* 2004 WY 135, ¶ 8, 100 P.3d 411, 413 (Wyo.2004) (quoting *Metz Beverage Co. v. Wyoming Beverages, Inc.,* 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo.2002)). The party requesting a summary judgment bears the initial burden of establishing a prima facie case for summary judgment. If he carries his burden, "the party who is opposing the motion for summary judgment must present specific facts to demonstrate that a genuine issue of material fact exists." *Id.* We have explained the duties of the party opposing a motion for summary judgment as follows.

> After a movant has adequately supported the motion for summary judgment, the opposing party must come forward with competent evidence admissible at trial showing there are genuine issues of material fact. The opposing party must affirmatively set forth material, specific facts in opposition to a motion for summary judgment, and cannot rely only upon allegations and pleadings . . ., and conclusory statements or mere opinions are insufficient to satisfy the opposing party's burden.

The evidence opposing a prima facie case on a motion for summary judgment "must be competent and admissible, lest the rule permitting summary judgments be entirely eviscerated by plaintiffs proceeding to trial on the basis of mere conjecture or wishful speculation." Speculation, conjecture, the suggestion of a possibility, guesses, or even probability, are insufficient to establish an issue of material fact.

*Throckmartin v. Century 21 Top Realty,* 2010 WY 23, ¶ 12, 226 P.3d 793, 798 (Wyo. 2010) (citations omitted).

**Binding Effect of Order Appointing GAL**

[¶ 15] Douglas contends that the district court's decision to appoint a GAL to look into Douglas's allegations became the "law of this case" and, thereafter, the district court could not return this litigation to a position where the "necessity" for a GAL was a matter subject to a motion for summary judgment. We apply this reasoning to our review of this issue:

> Under the law of the case doctrine, a court's decision on an issue of law at one stage of a proceeding is binding in successive stages of the litigation. *Triton Coal Co. v. Husman, Inc.,* 846 P.2d 664, 667 (Wyo.1993), citing 1B James W. Moore, Jo Esha Lucas & Thomas S. Currier, MOORE'S FEDERAL PRACTICE, ¶ 0.404[1] (2d ed.1983). Ordinarily, the law of the case doctrine requires a trial court to adhere to its own prior rulings, the rulings of an appellate court, or another judge's rulings in the case or a closely related case. *Id.* at 667–68. The law of the case doctrine is a discretionary rule which does not constitute a limitation on the court's power but merely "expresses the practice of courts generally to refuse to reopen what has been decided." *Brown v. State,* 953 P.2d 1170, 1174 (Wyo.1998).
>
> The law of the case doctrine is subject to some exceptions. *Wessel v. City of Albuquerque,* 463 F.3d 1138, 1144 (10th Cir. 2006). One of those exceptions applies when the evidence in a subsequent trial is substantially different from that presented in the earlier proceeding. *Id.* Additionally, the law of the case doctrine applies only to issues actually decided, not to issues left open. 18B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE: Jurisdiction § 4478 (2d ed.2002).

*Lieberman v. Mossbrook,* 2009 WY 65, ¶¶ 28–29, 208 P.3d 1296, 1305–06 (Wyo.2009).

[¶ 16] Here, it is quite unmistakable that the district court did not decide the issue of whether or not a guardian/conservator was a "necessity," it only decided that in the interests of caution that further independent inquiry was warranted before a decision about "necessity" was finally made. The GAL's report exposed most of the content of Douglas's complaint to be incorrect and/or exaggerated. The district court had not decided the issue of "necessity," it only decided that inquiry into very serious allegations of personal abuse of Mrs. Parkhurst and waste of

her estate was a prudent first step. Because of these circumstances, we conclude that the law of the case doctrine had no application.

**Necessity**

[¶ 17] The meaning of "necessity" in the context of this case, and the law applicable to it, is at the heart of this appeal. Wyo. Stat. Ann. § 3–2–104 (LexisNexis 2009) provides:

§ 3–2–104. **Appointment of guardian.**

(a) The court may appoint a **guardian** if the allegations of the petition as to the status of the proposed ward and the *necessity* for the appointment of a guardian are proved by a preponderance of the evidence.

(b) The order appointing a guardian shall state the findings of the court, including:

(i) The reasons why the ward is in need of a guardian;

(ii) The appointment of the guardian;

(iii) The duration of the appointment for a specified term or permanent, subject to W.S. 3–3–1101;

(iv) The limited or plenary duties of the guardian. [Emphasis added.]

[¶ 18] Wyo. Stat. Ann. § 3–3–104 (Lexis-Nexis 2009) provides:

§ 3–3–104. **Appointment of conservator.**

(a) The court may appoint a **conservator** if the allegations of the petition as to the status of the proposed ward and the *necessity* for the appointment of a conservator are proved by a preponderance of the evidence.

(b) The order appointing a conservator shall state the findings of the court, including:

(i) Reasons why the ward is in need of a conservator;

(ii) Appointment of the conservator;

(iii) The duration of the appointment for a specified term or permanent, subject to W.S. 3–3–1101;

(iv) The limited or plenary duties of the conservator. [Emphasis added.]

[¶ 19] The Wyoming statutes governing a durable power of attorney contemplate that a conservator may be appointed even if such an instrument is in existence. However, in the present circumstances that provision would only apply in the event of Parkhurst's death, or other substantive facts constituting a "necessity," as her durable power of attorney was not affected in any way by her disability or incapacity:

§ 3–5–101. **When power of attorney not affected by disability.**

(a) A person, known as the principal, may designate another person to act as the attorney in fact or agent for the principal. The power of attorney shall be in writing and shall state:

(i) "This power of attorney shall not become ineffective by my disability"; or

(ii) "This power of attorney shall become effective upon my disability"; or

(iii) Words showing the intent of the principal that the authority conferred by his power of attorney instrument shall be exercised notwithstanding his disability.

(b) Subject to the restrictions in W.S. 35–22–403, the authority of the attorney in fact or agent may be exercised by him on behalf of the principal according to the terms stated in the power of attorney instrument notwithstanding the subsequent disability or incapacity of the principal or uncertainty concerning whether the principal is alive or deceased.

(c) All acts done by the attorney in fact or agent pursuant to the power during any period of disability or incompetence or uncertainty as to whether the principal is dead or alive have the same effect and inure to the benefit of and bind the principal or his heirs, devisees and personal representative as if the principal were alive, competent and not disabled. *If a conservator thereafter is appointed for the principal, the attorney in fact or agent, during the continuance of the appointment, shall account to the conservator rather than the principal. The conservator has the same power the principal would have had if he were not disabled or incompetent to revoke, suspend or terminate all or any part of the*

*power of attorney or agency.* [Emphasis added.]

Wyo. Stat. Ann. § 3-5-101 (LexisNexis 2009).

[¶ 20] With respect to the Advanced Health Care Directive (power of attorney), a health care decision of an agent takes precedence over that of a guardian. Wyo. Stat. Ann. §§ 35-22-402(a)(i) and (ii) and 35-22-407(b) (LexisNexis 2009).

[¶ 21] To the extent this issue involves the construction of these statutes, we apply our well-known rules of statutory construction that:

> Statutory construction is a question of law, so our standard of review is de novo. We endeavor to interpret statutes in accordance with [the] legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute in pari materia. When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. We must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation. Moreover, we will not enlarge, stretch, expand, or extend a statute to matters that do not fall within its express provisions.

*Bloomer v. State,* 2009 WY 77, ¶ 8, 209 P.3d 574, 578 (Wyo.2009).

[¶ 22] *Webster's Third New International Dictionary* 1510-11 (1986) provides us with these pertinent definitions:

> Necessity **1:** the quality or state or fact of being necessary as **a:** a condition arising out of circumstances that compels to a certain course of action; "necessary" **b:** of, relating to, or having the character of something that is logically required or logically inevitable or that cannot be denied without involving contradiction.

[¶ 23] This recitation of the generally applicable law with respect to the "necessity" for the appointment of a guardian or conservator provides us with additional guidance:

> ... [N]o general rule exists as to the conditions warranting the appointment of a guardian for an incompetent person, due to the variances in the statutes among the jurisdictions and because the necessity for a guardian generally is determined on the circumstances of the particular case. A guardian should be appointed only as a last resort when there are no available resources or alternatives available to protect an incapacitated person. The appointment of a conservator is based on a judicial determination that it is necessary to protect the property of one who is unable to mange his or her property and affairs effectively, for various reasons, including physical illness or disability, and that such person has property that will be wasted or dissipated unless proper management is provided.

39 Am.Jur.2d *Guardian and Ward* § 24 (2008).

[¶ 24] Wyoming is one of only a few states which has not adopted the Uniform Durable Power of Attorney Act, 8A Uniform Laws Annotated, 233 (2003 and Supp.2010). Of significance to this case, we take note that Section 3 of that Act provides:

**§ 3. [Relation of Attorney in Fact to Court-Appointed Fiduciary].**

(a) If, following execution of a durable power of attorney, a court of the principal's domicile appoints a conservator, guardian of the estate, or other fiduciary charged with management of all of the principal's property or all of his property except specified exclusions, the attorney in fact is accountable to the fiduciary as well as to the principal. The fiduciary has the same power to revoke or amend the power of attorney that the principal would have had if he were not disabled or incapacitated.

(b) A principal may nominate, by a durable power of attorney, the conservator, guardian of his estate, or guardian of his person for consideration by the court if protective proceedings for the principal's person or estate are thereafter commenced. The court shall make its appointment in accordance with the principal's

most recent nomination in a durable power of attorney except for good cause or disqualification.

*Id.*, 252; also see Betsy Abramson, *Guardianships and Advanced Planning Alternatives,* 19–23 (Center for Public Representation 1992).

[¶ 25]  The determination of "necessity" in this particular case must be analyzed in light of the decisions Parkhurst made while she was not incapacitated.  It is not disputed that Parkhurst now lacks the capacity to manage her own personal and financial affairs.  However, during a time when her capacity to make decisions about her post-incapacity affairs was not at all in question, she made arrangements to appoint an attorney in fact for just such a contingency as that which has now arisen.  In September 2001, she executed a Durable Power of Attorney that, in the case of her estate, appointed Randall as her attorney in fact immediately, and in the case of her personal and health care decisions came into effect upon her incapacity to make such decisions herself.

[¶ 26]  The GAL observed that Parkhurst was living quite comfortably at the Huston Ranch.  Prior to moving to the ranch, Parkhurst had lived in Encampment closer to friends and family.  The GAL's report found that Parkhurst was well cared for and that her estate was well managed.  The issue of "necessity" found its genesis in Douglas's allegations that Randall was isolating Parkhurst from her friends and family, as well as pastoral attention, and that Parkhurst's care was largely entrusted to the 16–year–old daughter of Randall's woman friend.  He claimed a guardian was needed to ensure that those matters were monitored by a guardian and/or conservator, and that if that guardian/conservator was not him, it should be some other qualified person.  The GAL noted, as we do here, that there was considerable tension between Randall and Douglas, as well as between Douglas and Parkhurst, because of a lawsuit dating back to August of 2001, just one month before Parkhurst designated Randall as her attorney in fact.  *Parkhurst v. Boykin,* 2004 WY 90, ¶ 5, 94 P.3d 450, 453–54 (Wyo.2004) (In that suit, Parkhurst sued Douglas in order to obtain posses-

sion of the Huston Ranch where she was living at the time of these proceedings.).  Douglas also asserted that Randall was not managing Parkhurst's ranch in a manner that maximized income to Parkhurst.  Furthermore, Douglas contended that the Durable Power of Attorney permitted Randall to make gifts of Parkhurst's estate, including to himself.  Douglas suggested that such a power was subject to abuse, and a conservator was needed to monitor that power, as well as that Randall was depleting Parkhurst's resources for his own personal benefit and enrichment.  In the process of inquiring into the allegations made by Douglas, the GAL spoke to Randall, to Randall's woman friend and her daughter, to Parkhurst, the hired man at the ranch where Parkhurst resided (Douglas averred in his pleadings that Randall was trying to manage both his own ranch and Parkhurst's ranch, without the aid of a hired hand).  He also talked with Douglas and his wife, as well as a number of other family members and friends of Parkhurst.

[¶ 27]  Despite not uncovering any facts and circumstances that demonstrated that Randall was not performing his responsibilities as Parkhurst's attorney in fact, the GAL determined that a guardian/conservator was necessary so as to hold the attorney in fact accountable.  The applicable Wyoming statutes impose no such requirement.  The GAL also recommended that Randall be appointed the guardian/conservator.  This mechanism would require Randall to report Parkhurst's condition and the condition of her estate, at such intervals as the district court might require.  The GAL also recommended that a healthcare professional review and evaluate Parkhurst's current living arrangements at the Huston Ranch, and that a comprehensive visitation program be put in place so that Parkhurst could see a broad array of family and friends.  Finally, he recommended that visitors be educated and informed about interacting with a person suffering from dementia and that the visitation program be regulated in a manner that worked toward Parkhurst's best interests.  The GAL suggested this visitation program should include Douglas and his immediate family.

[¶ 28] Parkhurst was about 75 years old at the time of these proceedings. The GAL reported that she was generally in good condition, although it was also uncontested that she suffered from moderate/middle-stage dementia. She was able to feed herself, dress herself and provide for her personal hygiene and toileting. The GAL cited one example of her functioning level, which was that she left a cooking pot unattended on the stove to the extent that the pot burned. The GAL concluded that Douglas exaggerated the severity of Parkhurst's dementia, although it is to be expected that her condition will worsen in the future. As to her care, the GAL noted that Parkhurst is attended by a female adult during the day, especially on week days. Randall visits with his mother most mornings and/or evenings and spends a significant portion of the day with her on weekends. The adult female mentioned above is assisted by her 16–year–old daughter in the morning and the evening, and the daughter is there during each night. Parkhurst is asleep most of the time the 16–year–old is there.

[¶ 29] In sum, Parkhurst has around-the-clock companionship, which the GAL considered vital. If someone is needed to stay with Parkhurst, Randall makes appropriate arrangements. The GAL assessed Parkhurst's living arrangements as satisfactory, but that that may change as Parkhurst's condition progresses. The GAL noted Randall was well aware of this possibility. The GAL recommended that a healthcare professional be brought in to further assess Parkhurst's living circumstances.

[¶ 30] With respect to Parkhurst's finances, the GAL noted that Randall was well-informed about her financial picture and that he was managing that aspect of Parkhurst's affairs well. The GAL's only concern was that the Durable Power of Attorney permitted Randall to make gifts to himself and, while Randall had not done so, he could in the future.

[¶ 31] In a decision letter filed of record on September 11, 2009, the district court credited the factual material contained in the GAL's report, but did not credit the GAL's conclusions and recommendations. The district court noted that the issue was the "ne-

cessity" of a guardian/conservator, as that term is used in the governing statutes. The district court found that there were no genuine issues of material fact as to the question of "necessity." The district court concluded that Parkhurst had made arrangements for who should care for her in the event she was unable to do so. The district court then concluded that it was "not at liberty to add an accountability element to Wyoming's durable power of attorney statutes. And, absent some showing of present necessity, the Court will respect Parkhurst's wishes."

[¶ 32] The district court's conclusions are consistent with what we view as the pertinent authorities, including the citation to Am. Jur.2d, set out above. In their treatise, Joan M. Krauskopf, Robert N. Brown, Karen L. Tokarz, and Allan D. Bogutz, *Elderlaw: Advocacy for the Aging* §§ 9.1 and 9.2 (West 1993), the authors discuss the subject at hand. They note the need for court intervention in those circumstances where an individual has not made plans for the occurrence of lack of competence, and they also note that there can be advantages to court intervention. *Id.,* § 9.3. They go on to point out that in most cases advance planning is preferable to court action, because court action is costly, does not ensure that the authority is vested in a person of the individual's choice, does not delineate limits on that person's powers, and does not provide specific direction to the agent. One of the advance planning options is the durable power of attorney (for both estate and health care). The authors point out that there still may be a need for court intervention even with durable powers of attorney in place, but only in very limited circumstances. Powers of attorney are discussed in detail at §§ 8:11—8:22. In § 8:11 the authors state, "[t]he existence of a durable power [of attorney] ordinarily will obviate the need to seek appointment of a guardian or conservator." *Id.,* § 8:11 (Supp.2008–2009); also see § 8:14 (Supp. 2008–2009).

[¶ 33] The position taken by Douglas and the GAL relies in significant part on cases from jurisdictions that have adopted some form of the Uniform Act cited more fully above. In the case, *Estate of Ellis,* 23 So.3d

589, 598–99 (Miss.2009), it was held that Mississippi law imposes no barrier to the appointment of a conservator even in the presence of a durable power of attorney, indeed a conservator is authorized by statute to revoke or amend the power of attorney that the principal has executed. In addition to the statute being different, the facts are far different from those at issue here. In the *Ellis* case it was evident that the attorney in fact was dissipating his wife's estate in favor of a paramour, etc. *Id.,* 23 So.3d at 591–98.

[¶ 34] In the case *Russell v. Chase Inv. Servs. Corp.,* 2009 OK 22, 212 P.3d 1178, the Supreme Court of Oklahoma answered a question certified to it by the United States District Court for the Northern District of Oklahoma. Once again the facts are considerably different, as is the applicable law. *Id.,* ¶¶ 1–8, 212 P.3d at 1180–82. After thoroughly discussing the applicable law, in light of the facts, the appellate court answered the question submitted like this:

> *Title 58, subsection 1074(A)* unambiguously provides for the coexistence of a guardianship and a durable power of attorney. Russell has failed to point to anything, and we find nothing, in the Guardianship Act which would operate to effectively terminate a durable power of attorney upon the appointment of a general guardian. Therefore, we answer that the appointment of a general guardian of the property does not automatically withdraw all of a ward's assets such that an attorney-in-fact is without power to act pursuant to a durable power of attorney.

*Id.,* ¶ 25, 212 P.3d at 1186.

[¶ 35] In the case, *In re Guardianship of Sim,* 225 Neb. 181, 403 N.W.2d 721 (1987), the proposition that the appointment of a guardian/conservator may be a "necessity"

even where there is present an attorney in fact and a trustee is discussed. The facts of that case are far different than those at hand. In *Sim,* the elder person at issue was severely incapacitated by organic brain syndrome and/or Alzheimer's disease at the time when relatives caring for her obtained authority to mange her affairs. *Id.,* 403 N.W.2d at 725–32.

[¶ 36] In a case where husband held a durable power of attorney and a step-daughter had been appointed as guardian, the appellate court held that husband had not carried his burden of proof that the probate court exceeded its authority in appointing step-daughter as guardian. *Estate of Murray,* 14 Misc.3d 591, 824 N.Y.S.2d 864 (N.Y. 2006). The appellate court reached an almost identical decision in *Yates v. Rathbun,* 984 So.2d 1189, 1196 (Ala.Civ.App.2007).

### CONCLUSION

[¶ 37] The persuasive authorities convince us that, absent some clear reason for this Court to interfere, the district court's decision should be affirmed. Douglas has failed to come forward with anything more than speculation, conjecture, suggestions of possibilities, guesses, and perhaps even some probabilities. However, there is no evidence in this record which convinces us that the district court's order should be reversed. There are no genuine issues of material fact that need to be tested in the rigors of a trial. The order of the district court is affirmed.